James F. MILLER *v.* PULASKI COUNTY
CIRCUIT COURT, Circuit Judges Floyd LOFTON,
Perry WHITMORE, Tom DIGBY, John LANGSTON,
Lowber HENDRICKS, and David BOGARD

84-123                                              679 S.W.2d 187

Supreme Court of Arkansas
Opinion delivered November 13, 1984
[Rehearing denied December 17, 1984.]

56

*Davidson, Horne, Hollingsworth, Arnold & Grobmyer,* a Professional Association, by: *Allen W. Horne,* for appellant.

*Steve Clark,* Att'y Gen., by: *Tim Humphries,* Asst. Att'y Gen., for appellees.

DARRELL HICKMAN, Justice. On November 1, 1982, the judges of the Pulaski County Circuit Court issued an order which promulgated rules relating to the acceptance of bonds in their court. James F. Miller, a licensed bail bondsman, sought a writ of prohibition against enforcement of the order with this court. We denied the writ deciding that the appropriate remedy was not prohibition. *Miller* v. *Lofton,* 279 Ark. 461, 652 S.W.2d 627 (1983). Miller then filed an action in Pulaski County Circuit Court seeking a declaratory judgment asking that the order be declared void. A special circuit judge held that the circuit judges did have the authority to issue and enforce the order.

Miller argues on appeal that Act 268 of 1959, which gives the courts authority to regulate the business of bondsmen, was impliedly repealed by Act 400 of 1971. Act 400 essentially sets forth the licensing requirements for bail bondsmen by the Arkansas Department of Insurance. Miller concedes that repeals by implication are not favored. *Davis* v. *Cox,* 268 Ark. 78, 593 S.W.2d 180 (1980). He maintains, however, that the acts are in such conflict that Act 268 cannot stand. Miller argues that the acts are in conflict in that Act 268 gives courts the power to regulate the business of bondsmen and Act 400 invests the Department of Insurance with that power. Act 400 merely states that the Department of Insurance has the authority to administer the act and issue rules and regulations to that end. Ark. Stat. Ann. § 43-735 (Repl. 1977). That authority does not conflict with the authority given the courts by Act 268. The Insurance Department must have the authority to effect the purpose of Act 400 and the courts must have the authority to regulate their own business. The two acts recognize that and are reconcilable in that regard.

In one instance the acts are not reconcilable. The acts

conflict where Act 268 allows judges to fix the maximum amount of fees and Act 400 fixes the maximum amount. We find that Act 400 controls and amends Act 268 by implication in that respect. See *Pruitt* v. *Sebastian County Coal & Mining Co.*, 215 Ark. 673, 222 S.W.2d 50 (1949). Otherwise, the two acts are not in conflict and, therefore, there is no repeal by implication. *Selig* v. *Powell*, 253 Ark. 555, 489 S.W.2d 484 (1973).

Miller also argues that Act 400 of 1971 covers the entire subject matter of Act 268 and we should find a repeal by implication for that reason. We do not agree since, as we noted before, Act 268 recognizes the power of the judges to regulate the business of bail bondsmen acting in their courts, while Act 400 merely sets forth licensing require-ments.

In order to address Miller's other arguments, we will summarize parts of the order. It requires all bondsmen to apply for approval to make bail and to furnish a periodic financial statement or line of credit from a bank. The bondsman would be permitted to write bonds not exceeding his net worth or the amount of his line of credit. If by surety, the insurance company must be licensed to do business in Arkansas, and the bondsmen must notify the court of their contract and the limit of the bondsmen's authority to write bonds. The order further provides that the bondsmen must notify the court when the maximum liability authorized has been reached and stop writing bonds at that point and that the surety and agent would be jointly and severally liable on all bonds.

We find the portion of the order which absolutely prohibits the bondsman to write a bond which exceeds his net worth or the amount of his line of credit to be invalid. Judges must use discretion in determining whether a bondsman can honor his obligations. This provision is too arbitrary, because it robs the judge beforehand of his necessary discretion. Just as a judge cannot be forced to accept a bond, a judge cannot arbitrarily deny one.

Another argument involves a meeting called by the

circuit judges to explain the order to the bondsmen. At that meeting, Judge Floyd Lofton said that when a felon is bound over to circuit court from municipal court, his bond would not necessarily be approved in circuit court unless the bondsman had met the requirements of the order. Miller argues that that statement contravenes A.R.Cr.P. Rule 9.2 (e) which provides:

> An appearance bond and any security deposit required as a condition of release pursuant to subsection (b) of this rule shall serve to guarantee all subsequent appearances of a defendant on the same charge or on other charges arising out of the same conduct before any court, including appearances relating to appeals and upon remand. If the defendant is required to appear before a court other than the one ordering release, the order of release together with the appearance bond and any security or deposit shall be transmitted to the court before which the defendant is required to appear. This subsection shall not be construed to prevent a judicial officer from:
>
> (i) decreasing the amount of bond, security or deposit required by another judicial officer; or
>
> (ii) upon making written findings that factors exist increasing the risk of wilful nonappearance, increasing the amount of bond, security, or deposit required by another judicial officer.
>
> Upon an increase in the amount of bond or security, a surety may surrender a defendant.

Miller argues that Rule 9 guarantees that a bond approved in municial court will be sufficient for circuit court. We agree with Miller's argument only to the extent that we find that a judge cannot refuse the bond simply because it was made in municipal court. As the rule provides, the judge can decrease or increase the bond, but if he increases it, he must have reasons to do so.

The other provisions of the order are within the judges'

inherent power to promulgate rules or order for the conduct of their courts. See *Widmer* v. *Kennedy*, 243 Ark. 527, 421 S.W.2d 609 (1968). Those provisions appear to simply be a declaration of policy that is not violative of any statute or law. See *Letaw* v. *Smith*, 223 Ark. 638, 268 S.W.2d 3 (1954).

We find therefore that the order of November 1, 1983, is valid and enforceable to the extent herein explained and that Act 268 of 1959 is in part amended by implication by Act 400 of 1971.

Affirmed in part and reversed in part.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. I concur but wish to point out that it was the intent of A.R.Cr.P. Rule 9.2(e) to allow the same bond to remain in effect from the beginning of a criminal prosecution to the end of the appellate process. Therefore, the courts are bound to set out the reasons in writing when a bond is increased in the circuit courts. An appellant should not have to suffer on account of a disagreement between the trial court and the bondsman.